IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COURTROOM SCIENCES, INC., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION 3:09-CV-0251-O |
| | § | |
| v. | § | |
| | § | |
| CINDY ANDREWS, | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM AND ORDER**

Before the Court are: Defendant's Emergency Motion for Suspension of Preliminary Injunction Pending Appeal, or, in the Alternative, to Modify Injunction (Doc. #57); Plaintiff's Response to Defendant's Emergency Motion for Suspension of Preliminary Injunction Pending Appeal, or, in the Alternative, to Modify Injunction (Doc. #62); Plaintiff's Objections and Motion to Strike Documents in Appendix to Defendant's Emergency Motion for Suspension of Preliminary Injunction Pending Appeal, or, in the Alternative, to Modify Injunction  (Doc. #63); Plaintiff's Motion for Order to Show Cause (Doc. #69); Defendant's Motion to Compel Discovery (Doc. #72); Defendant's Motion for Leave to File Defendant's Amended Answer to Plaintiff's Second Amended Complaint and Defendant's Amended Counterclaim (Doc. #73); and, Plaintiff's Motion for Leave to Substitute Plaintiff's Second Amended Complaint (Doc. #75).

For reasons explained below, the Court today issues this Order requiring Plaintiff to supplement the record under seal with specific information regarding

those persons and entities it believes fall under the umbrella of the injunction issued by this Court on May 11, 2009. *See* Doc. #48 at 36-39.

I.    **INITIAL BACKGROUND**

The Court had earlier in this case issued a preliminary injunction ("the Injunction") enforcing contractual agreements of non-disclosure, non-competition, non-solicitation, and non-interference. *See Courtroom Sciences, Inc. v. Cindy Andrews,* 2009 LEXIS 39917 (N.D. – Tx. May 11, 2009). The Injunction is set out at *Courtroom Sciences, Inc.,* 2009 LEXIS 39917, *49-*53; *see also* Doc. #48 at 36-39. It is useful to revisit the Injunction and associated orders within that document.

The document contains findings of fact and conclusions of law followed by a set of three orders. *Id.* The Injunction is contained in numbered paragraphs one through eight. *Id.* Under a separate heading, under numbered paragraph nine, the Court sought to resolve a discovery dispute directly affecting the Injunction through a further order dealing with a body of documents upon which the dispute then concentrated. *Id.* at 39. Under another separate heading and numbered paragraphs ten and eleven, the Court issued further orders to manage the matter of maintaining a bond required in the case, *see* Fed. R. Civ. P. 65(c), which had been removed from state court after a bond was posted there. *See id.* at 40.

The Injunction itself is unremarkable in form and substance. *See* Doc. #48, 36-39.  For example, the same day the Court entered the Injunction, a sister court in Houston issued an order enforcing similar interests that was comparable in form and detail.  *See AlliantGroup, L.P. v. Feingold,* 2009 LEXIS 40140 (S.D.—Tx. May 11, 2009); *see also Indus. Insulation Group, LLC v. Sproule,* 613 F. Supp. 2d 844, 858 (S.D.

Tex. 2009). The Court has found no case requiring that every individual who falls within a described class of prohibited activity must be listed in an injunction.

Ordinarily, courts are able to rely on the memory of the ex-employee, and her reference to records, as sufficient to enable her from breaching an injunction. In this instance, however, Defendant has presented at least two practical difficulties, which the Court accepts. First, Andrews says that she cannot remember all of the companies and persons with whom her interaction is restricted because of her personal dealings with them while employed by CSI. Second, the broad sweep of the restrictive covenants could potentially lead to a situation in which she unknowingly has prohibited contact with someone within the ambit of the Injunction, particularly the non-solicitation provision. This is because that provision prohibits her from soliciting business from clients with whom CSI dealt during her tenure, including those she did not deal with personally.

Normally, recourse would be made to records from which to refresh her memory. However, at the heart of this dispute is the highly confidential nature of those records. The point was made over twenty times in the course of the hearing that CSI's relationship with their clients is highly confidential, as are details about those relationships. *See, e.g.,* Trans. 19/7, 10; 24/51; 35/3. Consequently, CSI had great reluctance to have the names spoken in court or fixed to a public document.

At the conclusion of the hearing that preceded the Injunction, Plaintiff's counsel noted the client list issue was still unresolved. Trans. 378/14. After recess and discussion among counsel, Defendant's counsel objected to the submission of the client list to the Court on grounds that Andrews needed to see the list to dispute

any inaccuracies. Trans. 380/25 – 381/14. The objection was overruled and the Court ordered the list submitted under seal. 381/15-20. However, the Court noted fairness concerns should the list *not* be available for review by Andrews and her counsel in the event it became probative to a subsequent order. 381 / 21-23.

## II.   DISCOVERY / CONFIDENTIALITY CONFLICT

The Court was somewhat surprised to find that what had been represented to be a "list," *see, e.g,* 378/14, 381/12-14*,* was not quite so straightforward. Without disclosing its contents, the Court will note that the bundle of documents were records whose significance was not immediately apparent to someone unfamiliar with Plaintiff's record keeping system. They did, however, explicitly name individuals, attorneys, and companies, and was at that time accepted as evidence of who CSI considered protected (albeit not necessarily the Court).[1] The Court assumed that Andrews would be able to decipher the precise nature of the relationships involved given her familiarity with Plaintiff's business procedures and object in future proceedings, including settlement negotiation conferences.

Accordingly, the Court issued a further order with the Injunction itself. *See* Doc. #48 at 39. In numbered paragraph 9 of the bundle of Court orders, a process was set out by which the evidence contained in the proffered records was simultaneously kept confidential among the Court and the parties yet also available

---

[1] The purpose of collecting the information was to provide a secure "common area" within which the parties could communicate their understanding of the Order without subjecting confidential relationships to public scrutiny. The Court has never ruled on whether those identified in the sealed records actually *are* clients or prospective clients of CSI who had dealings with Andrews or are otherwise members of those classes of persons covered by the Injunction. Obviously, without a forum of objection and verification under oath, that would have been rather premature.

for inspection by Andrews and her counsel to refresh her recollection and further identify those covered by the restrictive covenants as to whom Andrews had not dealt personally. Andrews availed herself of that opportunity through counsel.[2]

### III.     BREAKDOWN BETWEEN THE PARTIES

Since then, a highly contentious relationship impairing discovery and the process toward trial has been in evidence through multiple court filings. The Court neither blames nor sides with either party. The motions are under consideration but further information is required by the Court as the foundation from which to resolve the several disputes.

### IV.     COURT'S ORDERS

Accordingly:

1. By 5:00 p.m., August 31, 2009, Plaintiff is **ORDERED** to supplement the sealed documents with a list that will convey clearly the names of those individuals, firms or companies CSI believes are covered by the Injunction; the reason each is covered; the personal or professional contact (if any) CSI believes Andrews had with each; and, which of the four restrictive covenants specifically applies to each. This supplement shall be submitted in the same manner as the original submission of the sealed documents to the District Clerk. **THE DOCUMENTS WILL BE FOR THE EYES OF THE COURT ONLY UNLESS A SUBSEQUENT WRITTEN ORDER ISSUES.**

---

[2] Andrews was not *required* to consult the list. It was made available to her as a convenience, *at her request*, if she deemed it necessary to refresh her memory or supplement her personal records.

2. By 5:00 p.m., August 31, 2009, Plaintiff is **ORDERED** to supplement the sealed documents with a clear statement to the Court of what their sales territories[3] are by boundary or other objective demarcation; further, with regard to this supplement it shall be submitted in the same manner as the original submission of the sealed documents to the District Clerk. **THE DOCUMENTS WILL BE FOR THE EYES OF THE COURT ONLY UNLESS A SUBSEQUENT WRITTEN ORDER ISSUES.**

3. By 5:00 p.m., August 31, 2009, Defendant is **ORDERED** to file under seal a clear statement to the Court of what Defendant represents to have been her sales territories at CSI, identified by boundary or other objective demarcation; this supplement shall be submitted in the same manner as the original submission of the sealed documents by Plaintiffs to the District Clerk. **THE DOCUMENTS WILL BE FOR THE EYES OF THE COURT ONLY UNLESS A SUBSEQUENT WRITTEN ORDER ISSUES.**

SO **ORDERED** this 18th day of August 2009.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[3] The Court's findings of fact in this case included the failure of Plaintiffs to prove the territories within which Defendant was restricted. While testimony in the hearing led to a national range for the Injunction, that is under reconsideration under the Defendant's request for modification. It seemed agreed among the parties that the Chicago territory was "one of" those serviced by the Defendant, but no further information was adduced by either side.